**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

IN RE:                                                                      CHAPTER 11

J.E.P. REALTY, LLC                                          CASE NO. 18-51712-tnw

      DEBTOR

### DEBTOR'S PLAN OF REORGANIZATION

      Comes the Debtor, **J.E.P. REALTY, LLC** ("Debtor") and proposes this Plan of Reorganization ("**Plan**") pursuant to Bankruptcy Code §1121(c).

# TABLE OF CONTENTS

ARTICLE 1 - Definitions ...................................................................................................1

ARTICLE 2 - Treatment of Unclassified Expenses and Claims ....................................................10

      2.1     Allowed Administrative Expenses.............................................................10
      2.2     Applications for Allowance of Administrative Expenses.........................10
      2.3     U.S. Trustee Fees ....................................................................................10
      2.4     Payment of Post-Confirmation Fees and Expenses .................................10
      2.5     Provisions for Payment of Income Taxes ................................................11
      2.6     Debtor's Counsel Post-Confirmation........................................................11
      2.7     Other Professionals Post-Confirmation ...................................................12

ARTICLE 3 - Classification of Claims and Interests ...................................................................12

      3.1     Class 1 (Real Property Tax Creditors  – Secured Claims).......................12
      3.2     Class 2 (Farm Credit – Secured Claim) ...................................................12
      3.2     Class 3 (Danville Liquidation – Secured Claim) .....................................12
      3.3     Class 4 (Century Bank– Secured Claim) ..................................................12
      3.4     Class 5 (Priority Tax Claims) ...................................................................12
      3.5     Class 6 (Unsecured Claims)......................................................................13
      3.6     Class 7 (Subordinated Claims-Insiders)...................................................13
      3.7     Class 8 (Debtor) .......................................................................................13

ARTICLE 4 - Identification of Impaired Classes and Voting Classes .........................................13

      4.1     Impairment: Classes Entitled and Not Entitled to Vote............................13
      4.2     Controversies ...........................................................................................13

ARTICLE 5 - Treatment of Classes of Claims...........................................................................14

      5.1     Treatment of the Class 1 Secured Claims – (Real Property Tax Liens) ...14
      5.2     Treatment of the Class 2 Secured Claim - (Farm Credit) .........................14
      5.3     Treatment of the Class 3 Secured Claim – (Danville Liquidation) ...........15
      5.4     Treatment of the Class 4 Secured Claim – (Century Bank)......................15
      5.5     Treatment of the Class 5 Priority Tax Claims ..........................................16
      5.6     Treatment of the Class 6 Unsecured Claims ............................................16
      5.7     Treatment of the Class 7 Insider/Subordinated Claims ............................16
      5.8     Treatment of the Class 8 Debtor  .............................................................17

i

ARTICLE 6 - Means for Execution of the Plan ........................................................17

    6.1    Disbursing Agent ..................................................................17
    6.2    Provisions for Receipt and Distribution of Monies ...................19
    6.3    Monthly Reports ...................................................................20
    6.4    Closing of Case ....................................................................20
    6.5    Implementation of Extended Stay as to Creditors ...................20
    6.6    Enforcement of Article 5 Claims ..........................................20
    6.7    Provisions Relating to Default ..............................................21
    6.8    Discharge .............................................................................22
    6.9    Provisions for Abandoned Assets and Property Taxes Thereon.............22
    6.10   Exculpation for Post-Petition Events and Limitation of Liability ...........22
    6.11   Authorization on Encumbrance of Certain Assets and Post-Confirmation
           Borrowing and Sales ............................................................23
    6.12   Claims Covered by Insurance ...............................................23
    6.13   Provisions Applicable to Future Income Taxes ......................24
    6.14   Subordination of Owner's Claim ..........................................24


ARTICLE 7 - General Provisions.........................................................................24

    7.1    Modification of Plan .............................................................24
    7.2    Exemption from Certain Transfer Taxes ................................24
    7.3    Retention of Jurisdiction ......................................................24
    7.4    Distribution Pending Stay on Appeal .....................................25
    7.5    Extensions of Time ...............................................................25
    7.6    Post-Confirmation Actions, Reports and Final Decree............25
    7.7    Notices ................................................................................26
    7.8    Reduction of Notice Periods .................................................26
    7.9    Transfer of Claims ...............................................................27
    7.10   Captions ..............................................................................27
    7.11   Exhibits ...............................................................................27
    7.12   Choice of Law......................................................................27
    7.13   Binding Effect......................................................................27


ARTICLE 8 - Provisions Governing Allowances of Claims and Distributions
From the Post-Confirmation Estate ........................................................27

    8.1    Proofs of Claim, Allowances, Bar Dates and Time Limitations...............27
    8.2    Unknown, Unscheduled, Disputed, Contingent & Unliquidated Claims ..29
    8.3    Unclassified Claims Reserves................................................29
    8.4    Dates for Distribution ..........................................................29
    8.5    Satisfaction of Claims...........................................................29

8.6     Distributions of Cash and Plan Payment ....................................................29
8.7     Delivery of Distributions, Undeliverable Distribution
        and Change of Address ............................................................................29
8.8     Time Bar to Check Payments and Disallowances ....................................30
8.9     Transactions on Business Days.................................................................30

ARTICLE 9 - Procedures for Resolving and Treating Disputed Claims......................................30

9.1     Objections to Claims and Proofs of Claims..............................................30
9.2     No Distribution Pending Determination of Allowability of
        Disputed Claims; Distributions to be Made on Undisputed
        Portions of Partially Disputed Claims .......................................................30
9.3     Reserve Accounts for Disputed Claims ....................................................31
9.4     Allowance and Payment of Disputed Claims ...........................................31
9.5     Release of Excess Funds from Disputed Claims Reserve ........................31
9.6     Setoffs and Recoupment by Disbursing Agent ........................................31

ARTICLE 10 – Treatment of Executory Contracts and Unexpired Leases.................................31

10.1    Unexpired Leases and Executory Contracts .............................................31
10.2    Assumption of Executory Contracts and Unexpired Leases.....................32

iii

# ARTICLE 1
## Definitions

Unless otherwise stated, all terms not defined herein shall have the meaning set forth in the Bankruptcy Code and the Bankruptcy Rules. Where there is a conflict between a defined term herein and any term in the Code or the Bankruptcy Rules, the definition herein shall control. The following terms when used in the Plan shall have the meanings set forth in this Article:

1.1    "Abandoned Assets" shall mean such tangible property that is not listed in the Schedules and is not subject to any lien, mortgage or encumbrance. The Debtor does not anticipate there being any Abandoned Assets in this case.

1.2    "Accountant" shall mean such person retained by the Reorganized Debtor to prepare all required tax returns. If no such person is retained, then John Pappas shall act as preparer of all applicable tax returns.

1.3    "Adequate Protection Payments" shall mean the monthly payments made to the respective Secured Creditors commencing on or before the first day of each month with a ten calendar day grace period in an amount equal to such agreed order as entered by this Court and shall continue until a plan is confirmed. The Adequate Protection Payments shall be in addition to and shall not reduce the amount of the Secured Creditor's Allowed Secured Claims. After the entry of a Confirmation Order, such Adequate Protection Payments shall cease. Any payments made to a Creditor Pre-Confirmation shall be deemed retroactively as authorized Adequate Protection Payments, whether or not an order has been entered by the Court.

1.4    "Administrative Expense" shall mean any cost or expense of administration of the Case allowable under Code §503(b) and under the procedural terms set forth in Article 2 of this Plan, which are entitled to priority under §507(a)(1) or §507(b), and are incurred after the Petition Date and up to and including the Effective Date. Such claims shall include any actual and necessary expenses of preserving or liquidating property in the Case, including Professionals' fees and expenses, payable from the Cash or Plan Payment, if necessary. Any Creditor holding an Administrative Expense must file an application seeking approval of such claim within twenty-one (21) days from the Effective Date or forever be barred.

1.5    "Agreed Order of Adequate Protection" shall mean any such order as entered by the Bankruptcy Court that provides for the pre-confirmation payments to a Secured Creditor for collateral. Century Bank and the Debtor entered into an Agreed Order of Adequate Protection, which expired on December 31, 2018. Century Bank is in possession of such additional funds after December 31, 2018, which upon confirmation Century Bank shall be allowed to accept same as Pre-Confirmation Adequate Protection Payments.

1.6    "Allowed Claim" shall mean a Claim against the Debtor allowable under Code §502 for which:

1

1.6.1    A Proof of Claim was timely filed, and as to which either (a) no objection was filed within the time limitation fixed by the Plan, or (b) such Proof of Claim is allowed, despite any objection thereto, by a Final Order; or

1.6.2    A Claim is allowed pursuant to the terms of this Plan. Where there is a Claim allowed by the terms of this Plan, the terms of this Plan shall govern for purposes of allowance but all administrative claims shall first be approved by the Bankruptcy Court upon proper notice of an application; or

1.6.3    A Claim allowed pursuant to a Final Order of the Court.

1.6.4    The term "Allowed," when followed by a reference to a claim of a certain kind, shall mean an Allowed Claim of that kind of Claim.

1.6.5    Pursuant to Plan §5.4.1, Early Payment Incentive, the holder of any Allowed Unsecured Claim has the option to elect to be paid 10% of its Allowed Claim within twelve (12) months after the Effective Date, if approved by the Debtor and if such funds are available. Upon such payment, said Allowed Unsecured Claim shall be deemed to have been paid in full for the balance of any unpaid claim and the unpaid balance thereof shall be immediately deemed discharged, even if this case is dismissed, converted or the Debtor is found to be in default of any term in this Plan.

1.7    "Assets" shall mean (a) all of the Debtor's assets listed in the Schedules; (b) all assets of the Debtor as defined by Code §§ 541(a) and 1115; (c) all assets owned or used in the Debtor's Business; and (d) any asset not listed in the Schedules but later discovered to be owned by the Debtor.

1.8    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure, as amended or supplemented. When the word "Bankruptcy Rule" is followed by a number, it shall mean that particular rule in the Bankruptcy Rules.

1.9    "Bar Dates" shall mean the final date for filing Proofs of Claim to claims as set forth in Article 8 of this Plan. **The deadline for all Creditors holding any claim against the Debtor, including disputed, contingent or unliquidated claims, is April 11, 2019, being the date first set for the Disclosure Statement Approval Hearing, unless a contrary provision herein is established, such as the deadline for Unknown Claims.**

1.10    "Business" shall mean the Debtor's ongoing operations and its real property and all improvements, fixtures, applicable agreements, parking, access rights of way and all other appurtenances owned by the Debtor and all rents, and/or common area maintenance or similar funds and/or accounts, and all personal property, assets, leases, cash and cash equivalents, bank accounts, cash management accounts, accounts, notes, bills receivable, and choses in action, and

all other property, tangible or intangible, of any kind and every kind or character, including without limitation, furniture, furnishings, objects of art, machinery, goods, tools, supplies, appliances, general intangibles, contract rights, accounts, accounts receivable, franchises, licenses, certificates and permits, and fixtures, equipment, appurtenances, condemnation awards, proceeds, user ID's, websites, passwords, e-mail addresses and any other intellectual property, if any, and all other personal property owned or leased by Debtor and used or useful in the operation of the Business.

1.11    "Business Day" shall mean any day on which national banks are open to carry on their ordinary commercial banking business in the Commonwealth of Kentucky, excluding weekends.

1.12    "Case" shall mean this Chapter 11 case, No. 18-51712-tnw, commenced under the provisions of the Chapter 11 of the Code on September 20, 2018, in the Court under the name of the Debtor.

1.13    "Cash" shall mean gross amounts of money derived from the collection of Rents and all sources of revenue from the Debtor's normal operation of its Business.

1.14    "Century Bank" or "Century Bank's Allowed Secured Claim" shall mean Century Bank of Kentucky, Inc., a Secured Creditor herein with an Allowed Secured Claim of $715,000.00 with first priority mortgage(s) on the Debtor's Property located in Fayette County, described as 1718 and 1736 Alexandria Drive, Lexington, KY DB 2679, Pg. 228; and DB 2698, Pg. 690; with certain mortgages and conditional assignment of rents in DB 2836, Pg. 318, and an Allowed Unsecured Claim of $231,401.84. The value of the real property secured by Century Bank is $715,000. This creditor's amount to cure any defaults as of the Petition Date is $6,411.80, which cure amount shall be treated as an Unclassified Claim.

1.15    "Claim" shall mean the same as "claim" as defined in Code §101(5), to the extent that such claim against the Debtor was in existence on or as of the Petition Date. The term "Claim," when preceded by a reference to a Class of Claims, shall mean a Claim of that Class.

1.16    "Claimant" shall mean the holder of a Claim.

1.17    "Class" shall mean a category of Claims that are substantially similar to other Claims in such Class as authorized by Code §1122.

1.18    "Code" shall mean the United States Bankruptcy Code set forth in Title 11, United States Code, as amended.

1.19    "Confirmation" shall mean the entry of an Order by the Court approving or confirming the Plan.

1.20    "Confirmation Date" shall mean the date upon which an Order of Confirmation is entered by the Court approving or confirming the Plan.

1.21    "Confirmation Hearing" shall mean the date upon which the Court holds a hearing on confirmation of the Plan.

1.22    "Confirmation Order" or "Order of Confirmation" shall mean the Order entered by the Court on or after the Confirmation Date approving or confirming this Plan.

1.23    "Counsel" shall mean Matthew B. Bunch and any other attorney at Bunch & Brock, PSC, Lexington, Kentucky, appointed by the Court [Doc. No. 83] on January 24, 2019, to represent the Debtor and who will continue to represent the Reorganized Debtor Post-Confirmation, and shall be compensated at his hourly rate of $400.

1.24    "Court" and "Court Order" shall mean the United States Bankruptcy Court for the Eastern District of Kentucky, Lexington Division, including the United States Bankruptcy Judge presiding in this Case or such other court having jurisdiction over this Case. When "Court Order" or "Order" is used herein, they shall mean an order issued by the Court and entered in the Court's record.

1.25    "Creditor" shall mean the holder of a Claim. The term Creditor, when preceding a reference to a Class of Claims, shall mean a Creditor in its capacity as a holder of a Claim of that Class.

1.26    "Danville Liquidation" or "Danville Liquidation's Allowed Secured Claim" shall mean Danville Liquidation Center, LLC, a Secured Creditor of $288,066.62 with a mortgage recorded on 60 Bells Lane, Junction City, Kentucky 40440, in DB 510, Pg. 90; with mortgage in MB 676, Pg. 251. The value of the real property secured by Danville Liquidation is $290,000. This creditor's amount to cure any defaults as of the Petition Date is $0.00.

1.27    "Debtor" shall mean JEP Realty, LLC, as owned by John Pappas of Lexington, Kentucky, as its sole member. The Reorganized Debtor shall continue be managed by John Pappas after the Effective Date.

1.28    "Disallowed Claim" shall mean a Claim that is not an Allowed Claim.

1.29    "Disbursing Agent" shall mean Matthew B. Bunch of Bunch & Brock, PSC, Counsel for the Debtor and shall be compensated at his hourly rate of $400.

1.30    "Discharge" shall mean that meaning as set forth in Plan §6.8, *infra*.

1.31    "Disclosure Statement" shall mean that certain document styled "Disclosure Statement to Accompany Debtor's Plan of Reorganization," if amended or modified, required to

4

be filed by the Debtor pursuant to Code §1125, upon which the Impaired Classes of Creditors will rely in determining their vote for or against this Plan.

1.32    "Disputed Claim" shall mean a Claim or a portion of a Claim which the Debtor files or asserts an objection to such Claim or has listed as 'disputed' on the Schedules.

1.33    "Early Payment Incentive" shall mean that the holder of each Allowed Claim has the option to elect to be treated as follows: (i) if no election, then paid *pro rata* on its Allowed Unsecured Claim for the Term, or (ii) upon election on the Ballot or at any time within the twelve (12) months after the Effective Date, shall be paid 10% of its Allowed Unsecured Claim, if such funds are available. If the holder of an Allowed Claim makes the election on the Ballot or at any time prior to the conclusion of twelve (12) months after the Effective Date, and the Debtor makes the payment required thereunder, the holder of such Claim shall then be deemed to have released the unpaid balance of its claim against the Debtor, and all Debtor's officers, co-borrowers and/or guarantors, including John Pappas, shall be released of any deficiency claim, judgments or judgment liens. The holder of an Allowed Claim can make such election any time before the conclusion of the twelve (12) months after the Effective Date. The Debtor does not have any obligation to accept such election by any particular Creditor, if in its business judgment, the Reorganized Debtor does not have the funds within which to pay said election. Once an election is made, such election cannot be withdrawn.

1.34    "Effective Date" shall mean the third (3rd) Business Day following the date that the Order of Confirmation has become a Final Order.

1.35    "Entity" shall mean a Person. Entity and Person, wherever used in the Plan, shall be interchangeable.

1.36    "Epiphany Foam Insulation" shall mean Epiphany Foam Insulation, LLC, 731 McKinney Ave., Midway, KY 40347, which creditor is listed in the Schedules as possessing a mechanic's lien against the Debtor's Real Property located at 322 W. 3rd Street, Lexington, Fayette County, KY, in the amount of $5,127.39. This mechanic's lien is hereby deemed Disputed by the Debtor as that term is defined in this Plan because same was not properly perfected under the laws of the Commonwealth of Kentucky and such mechanic's lien shall be deemed avoidable by separate court order at any time after the entry of a Confirmation Order.

1.37    "Estimated Insurance Payment" shall mean the monthly amount to be paid for payment of insurance, which amount is equal to 1/12 of the estimated yearly premiums. Such amount shall be deemed as Operating Expenses.

1.38    "Estimated Tax Payment" shall mean the estimated amount to be paid to all taxing Entities for payment of real estate property taxes, which amount is equal to 1/12 of the estimated yearly property taxes. Such amount shall be deemed as Operating Expenses.

1.39    "Farm Credit's Allowed Secured Claim" shall mean Farm Credit Services of Mid-America FLCA, a Secured Creditor herein with an Allowed Secured Claim of $428,310 (being its claim as listed in the Petition of $457,607.81 less payment of $33,796.87 from the closing of the Newtown Road Property) with a first priority judgment lien on the Debtor's Property located at 7777 Old Danville Road and by Judgment Lien on all other Real Property located in Fayette and Jessamine Counties, except that Century Bank holds first and superior mortgages on 1718 and 1736 Alexandria Drive, Lexington, KY. The value of the real property secured by Farm Credit is $430,000. This creditor's amount to cure any defaults as of the Petition Date is $0.00.

1.40    "Final Order" shall mean an Order of the Court as to which any appeal that has been or may be taken has been resolved as set forth in the Code and the Bankruptcy Rule.

1.41    "Grace Period" shall mean the Debtor's right to exercise six (6) months without making a Plan Payment, which Grace Period may be replenished upon such additional payments, but the Term shall be extended by an equal number of months that a Grace Period is exercised.

1.42    "Impaired Class" shall mean a Class of Claims which is impaired within the meaning of Code §1124 as identified in Plan §4.1, *infra*.

1.43    "Initial Distribution Date" shall mean the date on which the Plan Payment will commence to be distributed by the Debtor in conformity with the terms of Plan Articles 2 and 4, *infra*.

1.44    "Insider" shall mean the same as such term is defined in Code §101(31).

1.45    "Local Rules" shall mean the "Local Rules of Practice for the United States Bankruptcy Court for the Eastern District of Kentucky." When the words "Local Rule" are followed by a number, it shall mean that particular rule in the Local Rules.

1.46    "Operating Expenses" shall mean the Debtor's Post-Confirmation bills, debts, liabilities, maintenance, expenses, invoices, charges and the like, including Estimated Tax Payments and Estimated Insurance Payments, incurred by the Debtor or Reorganized Debtor in the ordinary course of business.

1.47    "Owner of the Debtor" or "Owner" shall mean John Pappas as sole member.

1.48    "Person" shall be an Entity, which includes an individual, corporation, entity, limited liability company, partnership, joint venture, trust, estate, unincorporated organization or a governmental unit or any agency or political subdivision thereof.

1.49    "Petition" shall mean the Debtor's Chapter 11 bankruptcy petition filed in the Court on the Petition Date [Doc. # 1] including the Schedules and Statement of Financial Affairs and any amendments or modifications or portions thereto.

6

1.50    "Petition Date" shall mean the date and time of the filing of the Petition initiating this Case on September 20, 2018.

1.51    "Plan" shall mean this Plan of Reorganization pursuant to Chapter 11 of the Code as proposed by the Debtor either in its present form or as it may later be altered, amended or modified.

1.52    "Plan Payment" shall mean the funds of the Debtor available from disposable income at the end of each month for payment to all Unclassified Claims, Class 1 Claims, Class 5 Claims and Class 6 Claims, which payment shall be $1,000 per month, payable to and deposited into the IOLTA escrow account of the Disbursing Agent for the benefit of the above-stated Creditors holding such Claims.

1.53    "Post-Confirmation" shall mean an act or event that occurs, will occur, or occurred on or after the Confirmation Date.

1.54    "Post-Confirmation Lender" shall mean such entity that has or will loan such funds to the Debtor as necessary to pay off any Secured Creditor in the discretion of the Reorganized Debtor as provided for herein.

1.55    "Post-Petition" shall mean an act or event that occurs, will occur, or occurred on or after the Petition Date.

1.56    "Pre-Petition" shall mean an act or event that occurred before the Petition Date.

1.57    "Priority Claims" shall mean those Claims allowable by Code §§ 503(b) and 507(a).

1.58    "Proceeds" shall mean the proceeds of any sale or refinance of the Property.

1.59    "Professionals" shall mean all counsel, attorneys, accountants, appraisers, consultants, financial consultants and other professional persons properly retained by the Debtor, whose appointments were approved and authorized by the Court or have been appointed pursuant to this confirmed Plan, and who performed professional services for or on behalf of the Debtor from the Petition Date through forty days after the Effective Date and whose services and expenses are subject to allowance by the Court pursuant to Code §327 and those Professionals who may continue to represent the Debtor pursuant to the confirmed Plan beginning on the Effective Date and continuing thereafter during the Term.

1.60    "Proof of Claim" shall mean Official Form 10 as is used in the Court as evidence of a Claim due a Creditor, properly filled-out, executed with supporting documentation, and filed with the Court on or before the Bar Date.

1.61    "Property" shall mean all Assets, including Real Property.

1.62    "Property Funds" shall mean Cash, Plan Payment and Proceeds.

1.63    "Property Taxes" shall mean those *ad valorem* taxes due to the applicable city and/or county government or to any other tax assessing unit, for property taxes due on the real property of the Debtor.

1.64    "Pro Rata" shall mean proportionately each to the other, so that the ratio of the amount of the distribution made on account of an Allowed Claim to the amount of distribution made on account of all Allowed Claims of the Class in which the particular Allowed Claim is included is the same as the ratio of the amount of such Allowed Claim to the total amount of all Allowed Claims in such Class.

1.65    "Real Property Tax Claims" shall mean such Creditors who hold a tax lien on the Real Property of the Debtor for any property tax year, including any amount adjusted for Post-Petition or Post-Confirmation accrued interest and fees relating to the Real Property thereof. The LFUCG shall be deemed to hold a tax lien in the amount of its Allowed Claim or if no Proof of Claim is filed, then in the amount of $2,835 on 322 W. 3rd Street, Lexington, KY. The Jessamine County Sheriff's Office shall be deemed to hold a tax lien in the amount of its Allowed Claim if no Proof of Claim is filed, then in the amount of $4,000 on 777 old Danville Road, Nicholasville, KY for 2017 Property Tax Lien (EB 81, Pg. 504). DOT Capital Investments LLC shall be deemed to hold a tax lien in the amount of its Allowed Claim or if no Proof of Claim is filed, then in the amount of $6,293.34 on 60 Bells Lane, Junction City, Kentucky, pursuant to a 2017 Purchased County Tax Bill in EB65, Pg 204. City of Junction City, City Clerk, shall be deemed to hold a tax lien in the amount of its Allowed Claim or if no Proof of Claim is filed, then in the amount of $450 on 60 Bells Lane, Junction City, Kentucky, pursuant to a 2017 City Tax Lien in EB 64, Pg. 209. Arthur Roberts shall be deemed to hold a tax lien in the amount of its Allowed Claim or if no Proof of Claim is filed, then in the amount of $6,281.23 on 60 Bells Lane, Junction City, Kentucky for 2016 Purchased County Tax Bill, EB63, Pg. 131. Any creditor who holds a Real Property Tax Claim may file a Proof of Claim to assert any tax lien or claim thereon.

1.66    "Rents" shall mean the collection of money owed to the Debtor by the tenants of its business operations of the Property as rent and any other sources of income, which funds will be the source of the funding of this Plan.

1.67    "Reorganized Debtor" shall mean the Debtor after the Plan is confirmed by the entry of the Confirmation Order in the Court. The business operations at the Property shall be managed by John Pappas. John Pappas shall continue as the Designated Representative of the Debtor and Reorganized Debtor, and he shall have all necessary authority as granted to him within which to implement and enforce the terms of the Plan, including but not limited to, signing tax returns, seeking refinancing, etc. John Pappas shall have the right to make unilateral decisions as to all aspects of the operations of the Business on a day-to-day basis.

1.68    "Retained Assets" shall mean the any causes of action, bank checking and savings accounts, Business and the Office Equipment, and all assets listed in the Schedules or later discovered but not disclosed in the Petition or Schedules, which shall be retained by the Reorganized Debtor for the benefit of the Creditors.

1.69    "Schedules" shall mean the Schedules of Assets and Liabilities, Statements of Affairs, Statements of Executory Contracts and Unexpired Leases, and all amendments thereto, filed by the Debtor in this Case. "Schedule" in the singular and followed by a letter and/or a number shall mean a specific designated page or pages and, if applicable, a numerical line, in the Schedules.

1.70    "Secured Claim" shall mean the Claim of any Creditor as defined by Code §506 and who holds a validly perfected mortgage, lien or encumbrance to the extent of the value of its collateral superior to a trustee's rights under Code §544.

1.71    "Secured Creditor" shall mean a Creditor holding a Secured Claim.

1.72    "Subordinated Claims" shall mean all Claims of Insiders of the Debtor and the Owner of the Debtor and treated pursuant to Article 5.5.

1.73    "Taxes" shall mean all taxes owed to a governmental taxing unit, including but not by limitation, sales and use taxes, employment taxes, property taxes and all other taxes.

1.74    "Term" shall mean that the period of time beginning upon entry of the Confirmation Order and ending after sixty (60) consecutive months, subject to any Grace Periods. The Case may continue as a closed case subject to the provisions of Plan §6.4 until the events set forth in Plan §7.6 shall have occurred.

1.75    "Unclassified Claims" shall mean those Claims described in Article 2 of this Plan.

1.76    "Unknown Claim" shall mean a claim against the Debtor that existed on or arose before the Petition Date but was (a) neither listed nor scheduled in the Debtor's Schedules and such creditor had no notice or actual knowledge of the pendency of the Case in time to comply with procedures relating to Bar Claims deadlines; or (b) neither listed nor scheduled in the Debtor's Schedules and such holder had actual or constructive notice of the pendency of the Case but did not comply with the procedures relating to Bar Claims deadlines; or (c) a creditor of the Debtor that the Debtor was unaware that such a creditor existed and therefore did not list such Person in the Schedules. The deadline for Unknown Claims to be filed is April 11, 2019, as set forth in Article 8.2, *infra*.

1.77   "Unsecured Claim" shall mean a Claim against the Debtor (a) which is not secured by any collateral, (b) which Claim is not entitled to any priority treatment under the Code, and (c) which Claim is not a Tax Claim.

1.78   "Unsecured Creditor" shall mean a Creditor holding an Unsecured Claim.

**ARTICLE 2**
**Treatment of Unclassified Expenses and Claims**

2.1   Allowed Administrative Expense. The Disbursing Agent shall pay from the monthly Plan Payment to each holder of an Unclassified Claim on a *pro rata* basis an amount equal to its Allowed Administrative Expense after the date on which an Administrative Expense becomes an Allowed Administrative Expense by the entry of a Final Order. The following shall be deemed to be Unclassified Claims: all Professionals and U.S. Trustee's Quarterly Fees. Payments to Unclassified Claims shall begin and be paid monthly from the Plan Payment and before Classes 2, 3, 4 and 5 herein.

2.2   Applications for Allowance of Administrative Expenses. Any party in interest or Person as defined by the Bankruptcy Code seeking the allowance of an Administrative Expense, except the U.S. Trustee, shall file in the Court an application for an allowance of an Administrative Expense on or before twenty-one (21) days following the Effective Date to obtain an allowance thereof. Such allowances, as determined by the Court, shall be paid by the Disbursing Agent from the Debtor's Plan Payment in accordance with Plan §2.1. If any such application is not timely filed, then such claim shall stand as disallowed and be forever barred from being filed. The Debtor or any Creditor may object to any application and shall be responsible for obtaining a hearing date from the Court to hear such objection. Bunch & Brock currently holds funds in its IOLTA escrow account pursuant to this Court's Order [Doc. #83] for its sole benefit, which funds may be applied to any such fee as approved by this Court without sharing it among other Allowed Administrative Expenses. The DelCotto Law Group may apply any funds held in its IOLTA escrow account exclusively to its fees that are approved by the Court as Administrative Expenses.

2.3   U.S. Trustee Fees. All fees payable to the United States Trustee have been paid or shall be paid in full on or before the entry of a Confirmation Order of the Plan. Thereafter, the Debtor's obligation to pay United States Trustee fees shall continue until the Case is closed, dismissed, or converted, whichever occurs first, and said fees will be paid from the Plan Payment. The Debtor or Disbursing Agent shall timely file all reports required by the United States Trustee until the case is closed, dismissed, or converted. No personal assessment of U.S. Trustee fees shall be made against the Disbursing Agent, Counsel or any Professional in their personal capacity.

2.4   Payment of Post-Confirmation Fees and Expenses. After the Confirmation Date, the Disbursing Agent shall pay from the Debtor's Plan Payment all reasonable fees and expenses

incurred by the Professionals in connection with the Post-Confirmation implementation and consummation of this Plan, including the reasonable fees and expenses of Counsel for all legal services provided for or on behalf of the Reorganized Debtor, including any Adversary Action filed for or against them, if any, and any appellate legal services rendered, the Disbursing Agent, or the Accountant, if any, including but not limited to the prosecution of all Article 5 Claims and any other claims or causes of action that the Reorganized Debtor may possess and retain. Copies of such application shall be served on the parties set forth in Plan §7.7, *infra*, which shall be all attorneys of record via CM/ECF. If any Person disputes the reasonableness of any such invoice, such Person may file an objection with Counsel, with a copy to the Debtor and the Disbursing Agent. Within ten (10) days from the date of the submission of such invoice, the Disbursing Agent shall timely pay the undisputed portion of such invoice and the affected party shall, if unable to resolve the dispute by negotiation, file its objection with the Court for a judicial determination of the reasonableness of such invoice by motion, notice, and demand for a hearing.

2.5     <u>Provisions for Payment of Income Taxes</u>. The following provisions shall apply to the Debtor's corporate income taxes:

2.5.1     <u>Post-Petition Taxes</u>. Post-Confirmation, the Reorganized Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local tax units, and all of the Reorganized Debtor's future income shall be subject to any such withholdings or estimates' reporting requirements. The Debtor or Disbursing Agent shall file all tax returns, as required by law or this Plan, to be filed as soon as practicable. The Reorganized Debtor shall sign such estimates and tax returns on behalf of itself, and if any taxes or estimates of taxes are incurred by the Reorganized Debtor in the Case after the Effective Date and become due on and after such applicable taxing period, such taxes or estimated taxes shall be paid by the Receiver or Disbursing Agent to such taxing entities to the extent funds are available to pay such taxes.

2.5.2     <u>Estimated Tax Payment</u>. During the Term, the Estimated Tax Payment shall be Operating Expenses and applied by the taxing units to the actual taxes owed and any surplus in excess of actual taxes owed shall be refunded to the Disbursing Agent for distribution to the Creditors pursuant to the terms of the Plan.

2.5.3     <u>Tax Refunds</u>. If a taxing unit makes a refund to the Reorganized Debtor of an overpayment, if any, then the Reorganized Debtor shall pay over such funds to the Disbursing Agent for distribution to the Creditors pursuant to the terms of the Plan.

2.6     <u>Debtor's Counsel Post-Confirmation</u>. The following provisions shall be applicable to Debtor's Counsel after entry of the Confirmation Order:

2.6.1   <u>Duties of Counsel</u>. Counsel shall continue as counsel and attorneys for the Reorganized Debtor until the date when all active matters pending before the Court are resolved by a Final Order. His hourly rate is $400.

2.6.2   <u>Compensation of Counsel Post-Confirmation</u>. Post-Confirmation Counsel, being Matthew B. Bunch of Bunch & Brock PSC, shall be paid his ordinary compensation for legal services rendered pursuant to Plan §2.6.1 from the Plan Payment without the need of further Court Order but in conformity with the provisions of Plan §2.4, *supra.*

2.6.3   <u>Resignation of Counsel</u>. If Counsel resigns, then the Court may appoint a successor counsel recommended by the Reorganized Debtor, which new counsel shall become the Debtor's counsel upon entry of a Court Order of appointment and who shall then be subject to the provisions of this Plan as new Counsel.

2.7     <u>Other Professionals Post-Confirmation</u>. Post-Confirmation the Reorganized Debtor, the Disbursing Agent or Counsel may retain or engage other professionals or expert witnesses to perform such duties and responsibilities under these Plan terms, which professionals need not be appointed by the Court and which professionals will be compensated by the Disbursing Agent pursuant to the provisions of Plan §2.4, *supra.*

### ARTICLE 3
### <u>Classification of Claims and Interests</u>

The Allowed Claims and the interests shall be classified as follows:

3.1     <u>Class 1 (Real Property Tax Creditors – Holding a Fully Secured Claims (Tax Liens on Real Property)</u> shall consist of the Allowed Secured Claim of LFUCG, Jessamine County Sheriff, DOT Capital Investments, City of Junction City, City Clerk and Arthur Roberts, who shall be treated pursuant to the provisions of §5.1 *infra.*

3.2     <u>Class 2 (Farm Credit – Holding a Fully Secured Claim (Judgment Lien on Property located in Fayette and Jessamine Counties))</u> shall consist of the Allowed Secured Claim of Farm Credit who shall be treated pursuant to the provisions of §5.2 *infra.*

3.3     <u>Class 3 (Danville Liquidation – Holding a Fully Secured Claim (Mortgage on 60 Bells Lane and KY Rte. 300, Junction City, KY))</u> shall consist of the Allowed Secured Claim of Danville Liquidation, who shall be treated pursuant to the provisions of §5.3 *infra.*

3.4     <u>Class 4 (Century Bank – Holding a bi-furcated Secured and Unsecured Claim to the extent of the value of it collateral (Mortgage on 1718 and 1736 Alexandria Drive, Lexington,</u>

12

KY) shall consist of the Allowed Secured Claim of Century Bank, who shall be treated pursuant
to the provisions of §5.4 *infra*.

  3.5  Class 5 (Priority Tax Claims) shall consist of the Allowed Tax Claims who shall
be paid pursuant to the provisions of §5.5, *infra*.

  3.6  Class 6 (Unsecured Claims) shall consist of the Allowed Unsecured Claims who
shall be paid pursuant to the provisions of §5.6, *infra*.

  3.7  Class 7 (Subordinated Claim) shall consist of the sole member of owner of the
Debtor, being John Pappas, and shall be paid pursuant to the provisions of §5.7, *infra.*

  3.8  Class 8 (Debtor) shall consist of the interests of the Debtor, which interests shall
be treated pursuant to the provisions of §5.8, *infra*.


## ARTICLE 4
## Identification of Impaired Classes and Voting Classes

  4.1  Impairment; Classes Entitled and Not Entitled to Vote. In conformity with Code
§1124, all Impaired Classes of Creditors will be entitled to vote for or against the Plan. Only
holders of Allowed Claims in a Class may vote. The Class 1, 2, 3 and 4 Secured Claims are
impaired because they are being placed under the extended stay. Classes 5, 7 and 8 are not
impaired because there are no known Priority Tax Claims at this time and such taxing entities
were listed in the Petition for purposes of notice only. As such, their rights have not been altered,
even though any payments to them may be paid on or beyond the Effective Date. Class 5 shall
be deemed to have voted in favor of the Plan. Class 7 Subordinated Claims are Insiders of the
Debtor and not entitled to vote but shall be automatically deemed to have voted in favor
Confirmation. Class 8 Debtor is not impaired and will not vote, but as Plan proponent will be
deemed to have voted in favor of the Plan.

  4.2  Controversies. In the event of any controversy concerning the classification of
any Claim, or of any Creditor, or whether any Class of Claims is or is not impaired under this
Plan, the Court shall, after notice and hearing, determine such controversy, unless an agreed
order is tendered resolving such controversy.

**ARTICLE 5**
**Treatment of Classes of Claims**

5.1      Treatment of the Class 1 Secured Claim – (***Real Property Tax Claims – LFUCG, Jessamine County Sheriff, DOT Capital Investments, City of Junction City, City Clerk, Arthur Roberts***). After payment of Unclassified Claims in full, all Allowed Secured Claim of the Class 1 Real Property Tax Claims shall be paid *pro rata* with all other Real Property Tax Claims in the amount of their Allowed Secured Claim. Any adjustment of the amount of such Real Property Tax Claim may be made with notice to the Debtor or Disbursing Agent, and the Disbursing Agent or closing attorney if the property is sold is authorized to pay said Tax Lien in full.

5.2      Treatment of the Class 2 Secured Claim – (***Farm Credit***). The Allowed Secured Claim of the Class 1 Secured Creditor shall be treated as follows:

5.2.1    Mortgage and Judgment Lien. The Secured Creditor shall have its Allowed Secured Claim in the amount of its Proof of Claim #6. The Secured Creditor's Allowed Secured Claim is a first priority mortgage on 7777 Old Danville Road and a judgment lien on all Real Property of the Debtor in Fayette and Jessamine Counties, Kentucky, except that Century Bank holds superior and prior recorded mortgages on 1718 and 1736 Alexandria Drive, Lexington, KY Properties. If the Debtor refinances or sells the Alexandria Drive properties and pays Century Bank's Allowed Secured Claim, Farm Credit's Judgment Lien shall extinguish and be deemed released.

5.2.2    Repayment Terms. In full and final satisfaction of this Creditor's Allowed Secured Claim, the Debtor shall pay the Secured Creditor's Allowed Claim in full. The Debtor shall pay directly to this creditor the amount of $1,589.30 for interest only at 4.5% for 12 months beginning the first day of the month following the month of the Effective Date and thereafter $2,147.39 amortized at 4.5% for 30 years. There shall be an allowance of fifteen (15) days within to make any such payment. This Creditor shall be paid in full as set forth above. The Debtor has the right to sell or refinance to pay off Farm Credit in full after the Effective Date. Farm Credit may, at its sole discretion, agree to accept a reduced amount of its Allowed Secured Claim as an accommodation to the Debtor. **The Secured Claim of this Creditor shall be subject to the extended stay set forth in Plan § 6.5, *infra*, and against all officers, directors, members, personal guarantors, including John Pappas. If this Creditor's Secured Claim is timely satisfied as set forth above, then no claim by this Creditor shall exist against John Pappas.**

14

5.3	Treatment of the Class 3 Secured Claims – (***Danville Liquidation***). The Allowed Secured Claim of the Class 2 Danville Liquidation shall be treated as follows:

5.3.1	Mortgage. The Allowed Claim of Danville Liquidation in POC #5 is based upon a mortgage on Real Property in Junction City, Kentucky. The Secured Creditor's Allowed Secured Claim is a first priority lien on the Junction City, Kentucky Property.

5.3.2	Repayment Terms. In full and final satisfaction of this Creditor's Allowed Secured Claim, the Debtor shall pay the Secured Creditor's Allowed Claim in full. The Debtor shall pay directly to this creditors the amount of $1,080.25 for interest only at 4.5% for 12 months beginning the first day of the month following the month of the Effective Date and thereafter $1,459.59 amortized at 4.5% for 30 years. There shall be an allowance of fifteen (15) days within to make any such payment. This Creditor shall be paid in full as set forth above. The Debtor has the right to sell or refinance to pay off this Creditor in full after the Effective Date. This Creditor may, at its sole discretion, agree to accept a reduced amount of its Allowed Claim as an accommodation to the Debtor. **The Secured Claim of this Creditor shall be subject to the extended stay set forth in Plan § 6.5, *infra*, and against all officers, directors, members, personal guarantors, including John Pappas. If this Creditor's Secured Claim is timely satisfied as set forth above, then no claim by this Creditor shall exist against John Pappas.**

5.4	Treatment of the Class 4 Secured Claims – (***Century Bank***). The Allowed Secured Claim of the Class 3 Century Bank shall be treated as follows:

5.4.1	Mortgage. The Allowed Claim of Century Bank in POC #7 is based upon mortgages on Real Property located at 1718 and 1736 Alexandria Drive, Lexington, Fayette County, KY. The Secured Creditor's Allowed Secured Claim is a first priority lien on the Alexandria Drive Properties.

5.4.2	Repayment Terms. In full and final satisfaction of this Creditor's Allowed Secured Claim, the Debtor shall pay the Secured Creditor's Allowed Secured Claim of $715,000 in full. The Debtor shall pay directly to this creditor the amount of $2,681.25 for interest only at 4.5% for 12 months, plus 1/12 of the arrears of $6,411.80, for a total monthly payment of $3,215.57 beginning the first day of the month following the month of the Effective Date and thereafter $3,622.80 amortized at 4.5% for 30 years. There shall be an allowance of fifteen (15) days within to make any such payment. This Creditor shall be paid its Secured Claim in full as set forth above. The Debtor has the right to sell or refinance to pay off this Creditor in full after the Effective Date. This Creditor may, at its sole discretion, agree to accept a reduced amount of its Allowed Claim as an accommodation to the Debtor. **The Secured Claim of this Creditor shall be subject to the extended**

15

**stay set forth in Plan § 6.5, *infra*, and against all officers, directors, members, personal guarantors, including John Pappas. If this Creditor's Secured Claim is timely satisfied as set forth above, then no claim by this Creditor shall exist against John Pappas.**  Any funds currently in the possession of Century Bank may use accepted as Post-Petition adequate protection.

5.5     Treatment of the Class 5 Priority Tax Claims. Upon the payment of all Unclassified Claims and Class 1 Real Property Tax Lien Claims, the Disbursing Agent shall pay from the Plan Payment to the holders of the Priority Tax Claims *pro rata* in this Class until paid in full no later than five years from the Petition Date. It is estimated that there are $0.00 claims.

5.6     Treatment of the Class 6 Unsecured Claims. After payment of all Class 5 Tax Claims, if any, the Disbursing Agent shall pay from the Plan Payment to the holders of Class 6 Allowed Unsecured Claims *pro rata* no later than on a semi-annual basis during the Term.

    5.6.1   Early Payment Incentive. The holder of each Allowed Unsecured Claim has the option of electing to be paid 10% of its Allowed Unsecured Claim within twelve (12) months from the Effective Date, if such funds are available with such payment being deemed as payment in full of said Claim. The holder of such Claim shall then be deemed to have released its claim against the Debtor, and all Debtor's officers, co-borrowers and/or guarantors, including John Pappas, shall be released of any deficiency claims, judgments, judgment liens. Such election shall be made no later than twelve (12) months after the Effective Date. The Debtor does not have any obligation to accept such election by any particular Unsecured Creditor.

    **5.6.2   Any Creditor holding an Unsecured Claim shall be subject to the extended stay during the Term as set forth in Plan § 6.5, *infra*, and against all officers, directors, members, personal guarantors, including John Pappas. After the Term and all Allowed Claims are paid all co-borrowers, officers, directors, members, and guarantors shall be released of any deficiency Claim, if any, held by any Allowed Creditor. Any state court litigation by a Creditor shall be stayed or dismissed. The above provision shall be included in the Confirmation Order is bold print.**

5.7     Treatment of the Class 7 Subordinated Claims. John Pappas holds a Class 7 Allowed Claim in an unknown amount. The Debtor shall not make any distributions to this Class of Claims and shall be deemed paid in full upon satisfaction of Class 6 Unsecured Creditors. After all Allowed Claims have been either paid or satisfied pursuant to the terms of this Plan, the Owner's Equity shall be returned to him.

16

5.8    Treatment of the Class 8 Debtor. Upon the distribution of all funds to the Creditors treated herein, all of the Assets and Retained Assets shall revest in the Debtor free and clear of all liens, Claims and encumbrances of those Creditors treated herein.

## ARTICLE 6
## Means for Execution of the Plan

6.1    Disbursing Agent. The following provisions shall apply to the Disbursing Agent:

6.1.1    Appointment of Disbursing Agent. In the Confirmation Order, Matthew B. Bunch shall be appointed as the Disbursing Agent, and the Court may, in its discretion, fix a fidelity bond for the Disbursing Agent and his successors in conformity with Code §322(a), but not to exceed $25,000. The Disbursing Agent and his successors shall maintain said bond at such time or times for funds accumulating in their hands throughout the Term, or such extended time fixed by the Plan. The Court may waive the bond, or from time to time increase, reduce or alter the bonding terms herein. The cost of such bond shall be paid pursuant to Plan §2.1, *supra*. Any successor Disbursing Agent shall likewise be required to have a fidelity bond and shall be subject to the jurisdiction of this Court. Upon the Effective Date, the bond amount shall be zero ($0.00) due to the amount of the Plan Payments, unless the Court sets a different amount by separate order. Any fidelity insurance company may rely upon the Disbursing Agent's Final Report to terminate any such bond without a separate order.

6.1.2    Duties of the Disbursing Agent. The Disbursing Agent shall receive such funds under the terms of this Plan and shall make all distributions pursuant to the terms of this Plan. All funds coming into the possession of the Disbursing Agent shall be maintained by it in his law firm's IOLOTA escrow account. It shall hold and disburse the same to the Creditors in accordance with the priorities set forth in Articles 2, 3, and 5, in conformity with the procedures set forth in Article 8, and pursuant to any other applicable term of this Plan or the Code. The Disbursing Agent shall file monthly reports of all financial transactions with copies to all attorneys of record, the Debtor, the U.S. Trustee and any Creditor who requests same.

6.1.3    Monitoring of Disbursements. The Debtor, the U.S. Trustee and any Creditor may monitor the collection, accounting, treatment, and distributions made by the Disbursing Agent and payments to any Professional employed by him. This monitoring shall be subject to the following:

6.1.3.1    Availability of Records. The Disbursing Agent shall make available his books, records, office, and personnel to the Reorganized Debtor, U.S. Trustee and any Creditor at any reasonable time, but so as not

17

to interfere with the Disbursing Agent's business or his personal practice of law, upon at least a 24-hour fax or e-mail notice.

6.1.3.2   Payment of Compensation. The Disbursing Agent shall be paid its normal hourly fee of $400 per hour.

6.1.3.3   Option to Remove Disbursing Agent. The Reorganized Debtor, any Creditor, interested party or the U.S. Trustee shall have the right to move the Court to replace the Disbursing Agent, but only for good cause. Any successor thereof shall be appointed by the Court subject to the bonding requirements in Plan §6.1.1 prior to taking possession of the funds for which the Disbursing Agent is responsible.

6.1.3.4   Resignation by Disbursing Agent. The Disbursing Agent may, at any time and for any reason, resign by filing his notice of resignation in the Court. Any successor thereof shall be appointed by the Court subject to the bonding requirements in §6.1.1 prior to taking possession of the funds for which the Disbursing Agent is responsible.

6.1.3.5   Duties and Authority of Disbursing Agent. Except as otherwise limited herein, the Disbursing Agent shall have authority to act pursuant to the terms of Agreed Orders in the Bankruptcy Court, the Plan and/or the Confirmation Order, and to make distributions provided for in this Plan. The Disbursing Agent shall keep current all Post-Petition Taxes as well as all Post-Petition bills, expenses, invoice, charges and the like, incurred by the Debtor or Reorganized Debtor in the ordinary course of business, to the extent funds are available.

6.1.3.6 Disbursing Agent's Reports. Upon the distribution of all of the Plan Payment to be distributed by the Disbursing Agent under this Plan, he shall file with the Court his report of distribution pursuant to the provisions of Plan §7.6.1, *infra*.

6.1.3.7   Effectuating Documents. The Disbursing Agent is hereby authorized to sign, execute, deliver, file or record such documents, contracts, releases and other agreements on behalf of the Debtor and/or the Reorganized Debtor and to take all such further action as may be necessary to effectuate and evidence the terms of this Plan and its responsibilities hereunder.

6.2     Provisions for Receipt and Distribution of Monies. The Creditors shall be paid their respective Allowed Claims from the Plan Payment to the extent of such funds.

6.2.1     (A) Checking Accounts Maintained. Post-Confirmation and for the duration of the Term, the Reorganized Debtor will continue to use its normal pre-Petition business bank accounts and will deliver such Plan Payment to the Disbursing Agent, who shall make all disbursements pursuant to the terms set forth in this Plan. Any funds collected by the Reorganized Debtor relating to the claims and causes of action reserved herein, including but not limited to, all Article 5 Claims of the Bankruptcy Code, if any, may be deposited into Counsel's IOLTA Escrow Account for distribution to Unclassified Claims and any other class of creditor in the order of priority set forth in this Plan.

(B)  Payments of Tax Payments and Insurance Expenses and Operating Expenses. The Reorganized Debtor shall pay directly such appropriate payments of taxes to the governmental taxing units or insurance companies and all Operating Expenses.

(C) Payments of Plan Payment to Professionals. Beginning after the Effective Date and continuing thereafter until the Term, the Debtor shall deliver all Plan Payments to the Disbursing Agent, whom shall first pay all Unclassified Claim, *pro rata* pursuant to this Court's Order authorizing any such fees and reimbursement of expenses to such Professionals and the U.S. Trustee's Fees, Century Bank's Arrears, subject to the following sentence. Notwithstanding the foregoing, any funds that Bunch & Brock receives from John Pappas or his affiliates or companies pursuant to disclosure in that certain "Emergency Debtor's Application for Order to Retain Bunch & Brock as Counsel Under general Retainer" [Doc. #78], as approved by this Court by Order dated January 24, 2019 [Doc. #83] shall not be paid *pro rata* to other Unclassified Claims but shall be paid exclusively to Bunch & Brock to pay any fee application that is approved by the Court.

(D) Payment of Plan Payment. Beginning after the Effective Date and continuing thereafter until the Term, the Disbursing Agent is authorized and shall pay all required distributions pursuant to the terms of this Plan.

(F) Distributions by the Disbursing Agent. The Disbursing Agent's distribution of the Cash, Plan Payment and Property Funds to the Creditors shall be in conformity with the provisions of Article 8 and any other provisions applicable thereto in this Plan *passim*.

6.3    <u>Monthly Reports</u>. The Debtor's obligation of filing monthly reports under the Court's Order and the U.S. Trustee's operating guidelines shall end and terminate upon the closing of the Case pursuant to Plan §6.4, and the Reorganized Debtor shall file only such reports as are required by the terms of this Plan. The Disbursing Agent may file reports of distribution as he deems necessary, even after the case is closed.

6.4    <u>Closing of Case</u>. The Debtor may file a motion seeking to close this case upon proper motion and notice. After the closing of the Case, such closing shall (a) not alter, amend, revoke, or supersede the terms of the confirmed Plan, (b) not affect any rights of the Debtor, Unclassified Claimants, Creditors or any other Person treated under the Plan, (c) continue to cause the terms of the confirmed Plan to remain binding on all Persons, (d) cause all Orders of the Court to remain in full force and effect, (e) permit the entry of any Orders of the Court and the entry of the Discharge without re-opening the Case, (f) permit the Court to hear all objections to Claims without re-opening the Case, (g) except as set forth in this Plan, eliminate the Reorganized Debtor and Disbursing Agent's obligation to file reports with the U.S. Trustee or this Court, (h) eliminate the Reorganized Debtor's obligation to pay U.S. Trustee fees, and (i) cause the Court to retain all jurisdiction set forth herein in Plan §7.3.

6.5    **<u>Implementation of Extended Stay as to Creditors</u>. Except as specifically excepted by the terms of this Plan, on the Effective Date every Creditor, including but not limited to, a Creditor asserting or holding any Claim, including, but not limited to, a nondischargeable Claim, Unknown Claim, Contingent Claim, Disputed Claim or Unliquidated Claim, shall be precluded and stayed from asserting or continuing to assert, pursue or collect or execute on any claim or judgment against the Debtor, the Debtor's Officer or Director, Members, John Pappas, any Claim that arose before the Petition Date, and the automatic stay under Code §362 shall be extended to the end of the Term or to the date of the entry of the Discharge, whichever is later in time. This injunction shall be set forth in bold print in the Confirmation Order.**

6.6    **<u>Enforcement of Chapter 5 Claims</u>. Per Code §§ 105(a), 1123(b)(3), and 1141(b), upon the Effective Date: all present and future rights, claims, remedies, defenses, setoffs, recoupments, interests, suits, actions, and proceedings belonging to or held by the Debtor and its estate against any Person, whether arising before or after the Petition Date, including but not limited to (a) the preference or fraudulent conveyance claims or other rights to recover money or property pursuant to Code §§ 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553; or (b) any and all other claims, causes of action, avoiding powers or remedies arising under the Code or any other state or federal law, rule or regulation, shall be and hereby are reserved and deemed enforceable by the Reorganized Debtor, and shall survive and continue Post-Confirmation and shall not be considered abandoned from the case pursuant to Code §554. The Court shall include in the Confirmation Order appropriate provisions incorporating the terms set forth herein. The Disbursing Agent is hereby authorized to prosecute and pursue any and all such claims and causes of action as set forth above on behalf of the Reorganized Debtor. If there is any conflict of interest, separate**

20

**counsel may be appointed by this Court. The Reorganized Debtor will NOT bring any claims or causes of action against John Pappas, but the Debtor hereby expressly retains the right to pursue all such claims and causes of action in the event this case is converted to a case under Chapter 7 of the Bankruptcy Code.**

6.7    <u>Provisions Relating to Default</u>. Upon and after the Effective Date, the following provisions shall be applicable to the Reorganized Debtor:

6.7.1    <u>Default of Plan</u>.        Notwithstanding any provision hereof, this Plan shall go into default upon the occurrence of any one or more of the following events if the Reorganized Debtor or the Disbursing Agent shall: (a) sell or refinance the Property for an amount insufficient to pay the full amount of a Secured Creditor's Allowed Claim without the Secured Creditor's consent; (b) fail to make the Plan Payments required by the Plan, including, but not limited to, the Adequate Protection Payments, subject to any Grace Periods; or (c) fail to substantially comply with any of the Chapter 11 provisions applicable to them after Confirmation either by the Code or by this Plan.

6.7.2    <u>Notice of Default and Right to Cure Default</u>. If the U.S. Trustee or any Creditor seeks a determination of default, notice of said default shall be given to the Reorganized Debtor and the Disbursing Agent by sending a written notification of default providing a minimum ten (10) calendar day opportunity to cure the default; if the Reorganized Debtor or Disbursing Agent has not cured the default by the end of such cure period, then either the U.S. Trustee or the Creditor, as appropriate, may file a written notification of default with the Court. Within ten (10) calendar days after the written notification of default is filed (the "Filed Notice Period"), the Debtor may file a written objection or motion with respect to the default and may seek the Court's determination that a default has not occurred. If the Debtor timely files a written notice or objection and seeks a hearing at the court's next available hearing date, but the Court is unable to hold the hearing, the "Filed Notice Period" shall be extended until such time the Court is able to hold such hearing at its next regularly scheduled hearing date or such other agreed upon or ordered hearing date.

6.7.3    <u>Remedies in Case of Default</u>. If the Debtor fails to timely cure the default or to timely obtain the Court's determination that the Debtor is not in default, the Debtor shall be in default and the U.S Trustee or the Creditor shall be entitled to exercise any and all rights and remedies under the Plan, any governing agreement and/or applicable law. The appropriate remedy, may also include dismissal, conversion, sanctions or such other remedy or remedies decided by the U.S. Trustee, the Creditor and/or the Court, in each of their discretion, as applicable.

6.8     Discharge. Upon the filing of the final report of distribution pursuant to Plan §7.6.2, *infra*, the Debtor shall be discharged of after all Plan Payments have been made (a) all Claims treated by this Plan but only after Class 6 Allowed Unsecured Claims are paid to the maximum extent provided in this Plan; (b) all Claims listed in the Schedules unless such Claims are reaffirmed in conformity with the provisions of Code §524(c) and Rule 4008; (c) all Secured Claims, Unsecured Claims, Unknown Claims and any Disputed, Unliquidated and Contingent Claims; (d) all amounts not covered by insurance that are disallowed hereunder; and (e) all Disallowed Claims. The Debtor shall not be discharged of any Priority Tax Claims, if any.

6.9     Provisions for Abandoned Assets and Property Taxes Thereon, if applicable. (a) Notwithstanding any notice provisions of Local Rule 6007-1(a), all Abandoned Assets, if any, if not otherwise liquidated, sold, transferred or abandoned prior to the Effective Date, shall (i) be deemed abandoned from the jurisdiction of the Court pursuant to Code §554 on the Effective Date; (ii) the automatic stay and any extended stay shall be lifted as applicable to such Abandoned Assets; (iii) any Creditor holding a lien or mortgage on such Abandoned Assets or an asset owned by an Entity that is an Abandoned Asset shall be allowed to sell or to foreclose on their collateral; and (iv) any resulting shortfall or Deficiency Claim may be allowed as an Unsecured Claim in Class 6. Real Property Taxes shall remain on all Abandoned Assets, if applicable. (b) Nothing herein in this Plan shall be construed to be a limitation on the enforcement and collection of the Real Property Taxes from the Abandoned Assets by the appropriate governmental tax unit or units. Nothing in this paragraph shall be interpreted to prevent the collection or the pro-rating of Property Taxes in a sale of any Abandoned Asset. (c) If any Abandoned Property is encumbered to a Secured Creditor, after liquidation of such property producing a surplus above the debt owed to such Secured Creditor, such surplus, notwithstanding its source, shall be delivered to the Disbursing Agent as Plan Payment and distributed by him to the Unsecured Creditors pursuant to the terms of this Plan *passim*.

6.10    Exculpation for Post-Petition Events and Limitation of Liability. Except for fraud, gross negligence or gross mismanagement, Counsel, Accountants, and any other Professionals shall not have or incur any liability to, or be subject to any right of action by, the Debtor, the Reorganized Debtor, the Creditors, any holder of a Claim or interest, or any other Person or any of their respective agents, shareholders, employees, representatives, attorneys or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, (a) any act taken or omitted to be taken before, on or after the Petition Date through the Effective Date, (b) the Disclosure Statement, the Plan, and documents necessary to effectuate the Plan, (c) the solicitation of acceptances and rejections of the Plan, (d) the Debtor's Case or its filing thereof, and (e) the administration of the Plan. In all respects the aforesaid Professionals shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan. **All of the foregoing provisions of this section shall be placed in the Confirmation Order.**

22

6.11    <u>Authorization on Encumbrance of Certain Assets and Post-Confirmation Borrowing and Sales</u>. During the Term and consistent with the terms of the Plan and Confirmation Order, the Reorganized Debtor (a) may sell or refinance by a mortgage or lien any of its Assets or Retained Assets in order to pay the Secured Creditor's Allowed Claim in full, or such lower amount upon approval by the Secured Creditor(s).

6.12    <u>Claims Covered by Insurance</u>. If any Creditor, any holder of an Unknown Claim, or any claim that arises during the Term against the Debtor or Reorganized Debtor, which claim is covered by insurance, such claim shall stand disallowed *ipso facto* and without the need of a Court Order, but (a) the extended stay pursuant to Plan §6.5, *supra*, shall be automatically lifted and suspended; (b) the holder of such claim may pursue the Reorganized Debtor by name in any forum having appropriate jurisdiction, and (c) any recovery from the Reorganized Debtor shall be limited solely to insurance proceeds actually recovered as a result of a judgment on or settlement of such claim, and the Reorganized Debtor shall have no obligations otherwise to the holder of such claim. Such claimant shall have no right to seek allowance of an Administrative Expense or of an Unsecured Claim in Class 6.

6.13    <u>Provisions Applicable to Future Income Taxes</u>. The following provisions shall be applicable to the Debtor on or after the Petition Date:

    6.13.1    <u>Taxes Priority</u>. If the Reorganized Debtor has incurred or does incur any taxes, excluding any real property taxes, granted a priority under Code §507(a)(8), then such taxes shall be granted a priority by the Court in this Case as a Class 1 Real Property Tax Claim.

    6.13.2    <u>No Discharge of Taxes</u>. To the extent that a priority tax mentioned above remains unpaid upon the entry of the Discharge, such tax liability shall not be discharged by the Debtor's Discharge and such taxes shall survive the lapse of the Term, the dismissal, conversion and/or closing of this Case.

    6.13.3    <u>Current Income Taxes</u>. Any unpaid tax liabilities of the Debtor arising between the Petition Date and the Confirmation Date will be paid in full directly by the Debtor on or before April 15, 2020 or such time extensions obtained by the Reorganized Debtor, whichever event occurs later.

    6.13.4    <u>Setoff</u>. The taxing units may preserve and exercise all rights of setoff afforded by Code §553 and may offset any tax refunds due the Debtor against any outstanding tax liabilities owed by the Debtor.

    6.13.5    <u>No Request for Administrative Expenses</u>. Notwithstanding the provisions of Article 2, *supra*, the taxing units shall not be required to file a request for payment of Administrative Expenses or related tax penalties to have an Administrative Expense Claim. Any penalties relating to an Administrative

Expense Claim shall also be entitled to allowance and priority and shall not be subject to subordination or discharge.

      6.13.6  <u>Tax Liens</u>. To the extent that any tax liens attached to any property owned by the Debtor more than ninety (90) days prior to the Petition Date in this Case, such property shall remain subject to such tax liens as a Class 1 Real Property Tax Claim until such time as the amount of such taxes has been fully satisfied as defined herein. Upon satisfaction of the taxes, the taxing unit shall promptly release the lien.

6.14    <u>Subordination of Insiders' Claims</u>. Class 7 Claims shall be subordinated and will not receive distribution from Plan Payment after payment of Class 6 Unsecured Claims. The Owner, John Pappas, hereby waives his right to receive a distribution under this Plan.

6.15    <u>Post-Confirmation Management of the Debtor</u>. John Pappas shall continue in the performance of his duties and the operations of the Reorganized Debtor.

# ARTICLE 7
## General Provisions

7.1    <u>Modification of Plan</u>. Substantial consummation shall be deemed as of the Effective Date. The Debtor may propose amendments to or modifications of this Plan under Code §1127 at any time prior to the Effective Date. After the Effective Date, the Reorganized Debtor may (a) remedy defects or omissions or reconcile any inconsistencies in this Plan as may be necessary to carry out the purposes and intent of this Plan or as shown in the Disclosure Statement so long as the interests of the Creditors are not materially and adversely affected; (b) propose modifications to modify the Plan only to the extent of specific reservations of the right to modify as are contained in this Plan and as otherwise permitted by Code §1127. Any Creditor shall have the right to object and to argue for or against any modification proposed by the Reorganized Debtor, but any motion to modify the confirmed plan may be brought by the Reorganized Debtor on opportunity notice.

7.2    <u>Exemption from Certain Transfer Taxes</u>: Pursuant to Code § 1146(a), the delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including but not limited to deeds, bills of sale, assignments, or other instruments of transfer, shall not be subject to any stamp tax or similar transfer tax. The authority of the Reorganized Debtor to execute, deliver, file or record any of the aforesaid documents shall end upon conversion, if any, to Chapter 7 of the Code.

7.3    <u>Retention of Jurisdiction</u>. The following provisions shall upon Confirmation, be applicable to this Case and the Debtor:

24

7.3.1    General Retention. The Court shall retain all legally permissible jurisdiction, including that necessary to insure that the purpose and intent of this Plan are carried out, to hear and determine all Claims, and to determine any matter treated in this Plan.

7.3.2    Resolving Disputes. The Court shall further retain jurisdiction Post-Confirmation for the purpose of resolving all disputes concerning the meaning and effect of any of the Court's Orders, including the Confirmation Order, and the application or interpretation of any provision of this Plan.

7.3.3    Specific Retention. The Court shall retain jurisdiction for the following additional specific purposes after the Confirmation Date: (a) to modify this Plan pursuant to the Code and the Bankruptcy Rules, (b) to hear any objections to proposed modification; (c) to enforce performance by the Reorganized Debtor of its obligations to make distributions under this Plan and any other obligations and duties; (d) to enforce and interpret the terms of this Plan; (e) to enter such orders, including injunctions, as are necessary to enforce the title, rights and powers of the Reorganized Debtor and to interpret such limitations, restrictions, terms, and conditions on such title, rights and powers as may be necessary; (f) to enter an order concluding, terminating and/or closing this Case; (g) to decide issues concerning federal, state and local tax reporting and payment which arise in connection with the Confirmation, execution or performance of this Plan; (h) to continue hearings on adversary actions after entry of the Discharge and the filing of the final report; and (i) to determine and enter final orders in all adversary proceedings, if any, pending on the Confirmation Date or filed thereafter.

7.4    Distribution Pending Stay on Appeal. Any stay pending appeal shall apply only to amounts in controversy and distribution of amounts not in controversy shall continue in accordance with the terms of the Plan.

7.5    Extensions of Time. Notwithstanding any time limitations in this Plan, the Court may for good cause shown extend such time limitations.

7.6    Post-Confirmation Actions, Reports and Final Decree. After Confirmation of this Plan, the following events shall occur:

7.6.1    Reports of Distribution of Cash. After distribution of the Plan Payment, the Disbursing Agent shall file with the Court his report of receipts and disbursements of the Cash. Debtor's Counsel may assist the Disbursing Agent is compiling the Allowed Unclassified Claims and the Allowed Claims for Class 4 and 5 Creditors.

7.6.2   <u>Final Report</u>. After final distribution of the Plan Payment, the Disbursing Agent shall file a report of final distribution with the Court in conformity with Local Rules 4004-3(a) or 4004-3(b).

7.7   <u>Notices</u>. After Confirmation, any notice, report, motion, or filing required to be given to the Reorganized Debtor, the Disbursing Agent, or a Creditor pursuant to this Plan, the Code or the Bankruptcy Rules shall be in writing and, if sent by e-mail, shall be deemed to have been given when sent, but if mailed, shall be deemed to have been given three (3) days after the date sent. If such notice is sent by mail it shall be sent by first-class mail, postage prepaid. All notices shall be sent as follows:

If to Counsel, to:

> Matthew B. Bunch, Esq.
> Bunch & Brock
> 805 Security Trust Building
> 271 West Short Street
> Lexington, KY 40507
> (859) 254-5522
> matt@bunchlaw.com
> ATTORNEYS FOR THE REORGANIZED DEBTOR

If to the Reorganized Debtor, to:

> John Pappas
> 220 Kingsway Drive
> Lexington, KY 40502
> (859) 312-4486
> jpappasmd@gmail.com

If to the U.S. Trustee, to:

> Rachelle C. Dodson, Esq.
> Assistant U.S. Trustee
> 100 East Vine Street, Suite 500
> Lexington, KY 40507
> (859) 233-2822
> Rachelle.c.dodson@usdoj.gov

7.8   <u>Reduction of Notice Periods</u>. Notwithstanding Bankruptcy Rule 2002, the notice period applicable to service of any notice on the Debtor, Counsel, the Disbursing Agent, any Professional or a Creditor otherwise applicable pursuant to the provisions of the Code, the Bankruptcy Rules or this Plan, is reduced to a fourteen (14) day period, with the exception of any

26

applicable notice period relating to modification of the Plan after Confirmation, which notice period shall be twenty-one (21) days.

7.9        Transfer of Claims. Claims may be transferred but such transfer will be honored only if applicable Notice is given to Counsel, the Reorganized Debtor and the Disbursing Agent and only in accordance with Bankruptcy Rule 3001 or other notice or change of address as accepted by the Disbursing Agent. Pre-Confirmation transfers of Claims shall be recognized if the transfer was done in accordance with Bankruptcy Rule 3001(e).

7.10       Captions. Paragraph captions used herein are for convenience only and shall not affect the construction of this Plan.

7.11       Exhibits. All references to any exhibit herein shall be construed as references to an exhibit attached to this Plan and such exhibit shall be considered incorporated herein by this reference, the same as if set forth at length herein.

7.12       Choice of Law. Except to the extent that the Code or other federal statutes, case law, or regulations are applicable, the rights and obligations arising under the Plan shall be governed by, construed, and enforced in accordance with the laws of the Commonwealth of Kentucky. In the event of an inconsistency between the terms of this Plan and the laws of the Commonwealth of Kentucky, the terms of this Plan shall prevail.

7.13       Binding Effect. The rights and obligations of any Person named in, or referred to, or affected by this Plan shall be binding upon, and shall inure to the benefit of, the successors, heirs and assigns of such Person.

## ARTICLE 8
## Provisions Governing Allowances of Claims and Distributions
## From the Post-Confirmation Estate

8.1        Proofs of Claim, Allowances, Bar Dates, and Time Limitations. The allowance of Claims for distribution purposes shall be as follows:

8.1.1      Distribution Based on Allowed Claims Only. No Creditor shall receive any distribution under this Plan unless such Person holds an Allowed Claim.

**8.1.2       Filing of Proofs of Claim. Except as provided in Plan §8.1.2.3 and Plan §8.2, *infra*, no Creditor shall receive any distribution under this Plan unless such Person files or has filed a Proof of Claim with the Court on or before the Bar Date and such Claim becomes an Allowed Claim; provided, however, that any Creditor granted an Allowed Claim pursuant to the terms of this Plan shall not be required to file a Proof of Claim. All Creditors who have already filed a Proof of Claim may not amend it to a higher amount and**

**may not file additional Proofs of Claims. Any Creditor who has already filed a claim in the Claims Registry is deemed to have timely filed a proof of claim.**

8.1.2.1 <u>Business or Corporate Claims</u>. If any Person files a Proof of Claim on a debt arising from the operation of the Debtor's business operations, such Creditor shall attach evidence thereto of the Debtor's corporate liability for such Claim, or such Claim shall be a Disallowed Claim and shall not receive any distribution pursuant to the terms of this Plan.

8.1.2.2 <u>Deficiency Claims</u>. A Claim that becomes a Deficiency Claim shall *ipso facto* be deemed an Unsecured Claim. Any Secured Creditor shall be entitled to a Deficiency Claim under the terms of this Plan.

8.1.2.3 <u>Challenge of Disallowance</u>. Nothing herein shall preclude a Creditor whose Claim has been disallowed pursuant to Plan §§8.1.2.1, *supra*, above from seeking a reversal of its disallowance from the Court by motion, notice and a hearing.

8.1.3 <u>**Bar Date**</u>. **The time within which a Creditor must file a Proof of Claim shall be on or before the date first set for the disclosure statement approval hearing, being April 11, 2019. Any Creditor who has previously filed a Proof of Claim shall not be required to file a new Proof of Claim.**

8.1.4 <u>Late Claims</u>. Any Claim not timely filed pursuant to the terms of this Plan and specifically Plan §8.1.2, *supra*, shall *ipso facto* be a Disallowed Claim. The Reorganized Debtor or Counsel shall file an objection, notice or motion to disallow such late claim with the Court. The rights of judicial review pursuant to Plan §8.1.2.3 shall be available to any aggrieved creditor.

8.1.5 <u>Time for Objections and Objections to Claims; Proof of Claim by Owner</u>. (a) The Reorganized Debtor, the U.S. Trustee and any Creditor shall have the right to object to any Proof of Claim and notice thereof at any time before the first distribution is made to the Class 6 Unsecured Creditors, unless the time is extended by the Court by entry of an appropriate Order thereto. Distribution to any

Disputed Claim shall be subject to the provisions set forth in Plan §9.2 unless such objections have been resolved. (b) If the Owner or Insider files a Proof of Claim for himself or any of the corporations owned or controlled, directly or indirectly, by him, such Proof of Claim shall be treated as being subject to Plan §5.7, *supra*, without the need of a filed objection or a Court Order. If the Reorganized Debtor has filed an objection to any Proof of Claim that is listed as a Disputed Claim in the Schedules or in this Plan, then such Disputed Claim shall not be entitled to vote for or against this Plan.

8.2      Unknown or Unscheduled Claims. The following provisions shall be applicable to any Unknown or Unscheduled Claims:

8.2.1    Proofs of Claim for Unknown Claims. The time period for Proofs of Claim for Unknown or Unscheduled Claims to be filed shall be pursuant to this Court's Local Rule 3003-1, being the date first set for the disclosure statement approval hearing, being April 11, 2019.

8.2.2.   Effect of Unknown Claim Bar Date. A creditor holding an Unknown or Unscheduled Claim must file its Claim before the Unknown Claims Bar Date or its Claim shall be disallowed in all respects. The Proof of Claim shall be accompanied by the Creditor's affidavit establishing its qualification for an Unknown Claim as such term is defined in Plan's Article 1. The holder of an Unknown Claim that does not file a Proof of Claim by the Unknown Claims Bar Date shall be forever barred from asserting such Claim and from seeking any recovery from the Reorganized Debtor.

8.3      Unclassified Claims Reserves. Prior to making any distributions of the Debtor's Plan Payment to the Persons treated under the terms of this Plan, the Disbursing Agent shall first make distribution to the holders of Unclassified Claims in conformity with Plan's Article 2.

8.4      Dates for Distribution. The Disbursing Agent shall commence distributions of the Debtor's Plan Payment. Such distribution shall conform to the priorities fixed by the terms of this Plan.

8.5      Satisfaction of Claims. The payments, distributions, and other treatment provided in respect to each Allowed Claim in this Plan shall be in complete satisfaction and release of such Allowed Claim. Such satisfaction and release shall incur no income tax liability in conformity with 26 U.S.C. §108.

8.6      Distributions of Cash and Plan Payment. All payments to be made by the Disbursing Agent pursuant to this Plan shall be made by a check drawn on its bank account. The Disbursing Agent may issue a draft, check, money order, official bank check, or wire transfer of any distribution of Cash or Plan Payment or Property Funds to a Creditor upon the Creditor's request, provided that any such distribution be reduced by the cost of the wire transfer fee or charge thereof by such bank issuing such transfer.

8.7      Delivery of Distributions, Undeliverable Distributions and Changes of Address. Distributions to the holder of an Allowed Claim shall be made at the address of such holder as set forth in the Schedules or on the Proof of Claim filed by such holder or by a separate written notice to the Disbursing Agent providing actual knowledge to the Disbursing Agent of a mailing address or a change of address. **If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Disbursing Agent is notified**

29

in writing by such holder, within six months of the mailing date, of such holder's then current address, at which time all distributions shall be made to such holder. All Claims for undeliverable distributions shall be made within six months after the date such undeliverable distribution was initially made. **If any address correction is not timely made as provided herein, such Claim shall be disallowed and forever barred from all distribution under the Plan, with prejudice.** After such date, all unclaimed distributions shall be applied first to satisfy the costs of administering and fully consummating this Plan, then for distribution in accordance with this Plan, and the holder of any such Claim shall not be entitled to any other or further distribution under this Plan on account of such undeliverable distribution or such Claim. The Disbursing Agent shall not have the responsibility of tracking down the address of a Claimant whose check is returned because of a lack of a current address. **IT SHALL BE THE RESPONSIBILITY OF EVERY CREDITOR TO KEEP THE DISBURSING AGENT ADVISED OF SUCH CREDITOR'S CHANGE OF ADDRESS.**

8.8      Time Bar to Check Payments and Disallowances. Checks issued by the Disbursing Agent in respect of Allowed Clams shall be void if not negotiated within six months after the date of issuance thereof. **Requests for reissuance of any un-negotiated check shall be made to the Disbursing Agent by the holder of the Allowed Claim to whom such check originally was issued, on or before the expiration of six months following the date of issuance of such check.** After such date, all funds held on account of such void check shall be applied first to satisfy the costs of administering and fully consummating this Plan, then for distribution in accordance with this Plan. **If the holder of an un-negotiated check does not send a request for reissuance of its check within the six months limitation, then such Creditor's Claim shall be disallowed in its entirety and such holder shall not be entitled to, and shall be barred from, any other or further distribution on account of such void check or such Claim.**

8.9      Transactions on Business Days. If the Effective Date or any other date on which a transaction, event or act may occur or arise under this Plan shall occur on Saturday, Sunday or a day that is not a Business Day, the transaction, event or act contemplated by this Plan to occur on such day shall instead occur on the next day which is a Business Day.

## ARTICLE 9
## Procedures for Resolving and Treating Disputed Claims

9.1      Objections to Claims and Proofs of Claims. The Debtor or any Creditor shall have the right to object to Claims and the allowances of such Claims, subject to the procedures and limitations set forth in this Plan, the Bankruptcy Rules, and the Code.

9.2      No Distribution Pending Determination of Allowability of Disputed Claims; Distributions to be Made on Undisputed Balances of Partially Disputed Claims. No distribution shall be made under this Plan on account of any Disputed Claim unless and until such Claim becomes an Allowed Claim; provided, however, that, except as otherwise required by §502(d) of

the Code, if a Claim is partially disputed, contingent or unliquidated but the balance of the Claim is undisputed, liquidated and not contingent (the "Undisputed Balance"), then distribution shall be made to the holder of the Claim on such Undisputed Balance and distribution shall be withheld on the part of the Claim that is disputed, unliquidated, or contingent unless and until such part becomes an Allowed Claim.

9.3      Reserve Accounts for Disputed Claims. On or prior to the any distribution and each subsequent distribution, the Disbursing Agent shall reserve cash in an aggregate amount sufficient to pay each holder of a Disputed Claim (a) the amount of cash that such holder would have been entitled to receive under this Plan if such Claim had been an Allowed Claim, or (b) such lesser amount as the Court may estimate or may otherwise order ("Disputed Claims Reserve").

9.4      Allowance and Payment of Disputed Claims. If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall, within 40 days after the date on which such Disputed Claim becomes an Allowed Claim or as soon thereafter as is practicable, distribute from the Disputed Claims Reserve to the holder of such Allowed Claim the amount of distributions that such holder would have been entitled to receive under this Plan if such Claim had been an Allowed Claim on the Effective Date.

9.5      Release of Excess Funds from Disputed Claims Reserve. If at any time or from time to time after the Effective Date, there shall be cash in the Disputed Claims Reserve in an amount in excess of the amount which the Disbursing Agent is required at such time to reserve on account of Disputed Claims under this Plan or pursuant to any Order of the Court, such excess funds shall become available to the Disbursing Agent generally and shall be applied first to satisfy the costs of administration of the Plan and then for distribution in accordance with this Plan.

9.6      Set Offs and Recoupment by Disbursing Agent. The Disbursing Agent may, upon obtaining an Order after opportunity notice and a hearing, setoff against or recoup from the holder of an Allowed Claim and the distributions to be made pursuant to this Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the claims, rights and causes of action of any nature that the Debtor may have against the holder of such Allowed Claim; provided, however, that neither the failure to make such a setoff or assert a recoupment nor the allowance of any Claim shall constitute a waiver or release of such claims, rights and causes of action that the Debtor may possess against such holder.

## ARTICLE 10
### Treatment of Executory Contracts and Unexpired Leases

10.1      Unexpired Leases and Executory Contracts. To the extent that the Debtor is a party to any executory contracts and/or unexpired leases that are governed by Code §365 and except as set forth in Plan §10.2, all executory contracts and/or unexpired leases, are expressly rejected pursuant to Code § 365. Any Rejection Claim arising from such rejection shall become and be

31

treated as an Unsecured Claim. None of the residential real estate leases with each particular tenant(s) is deemed as an executory or unexpired contract and shall survive Confirmation of the Plan according to its terms therein.

   10.2 <u>Assumption of Executory Contract or Unexpired Lease</u>.  The Debtor assumes the License Agreement to permit an ATM machine on the property located at 1718/1736 Alexandria Drive, Lexington, which renews automatically on the November 1st, with PNC Bank; and the Cromwell Office Building Lease located at 1718/1736 Alexandria Drive, Suite 101 and 201, Lexington, with Resurrection Treatment Clinics and the Lease of 1718/1736 Alexandria Drive, Lexington, with ScintiPharma, LLC.

Dated: March 15, 2019                   **J.E.P. REALTY, LLC**

                              **By:**    **/s/ John Pappas**
                                     **John Pappas**
                                     **Designated Spokesperson**

PREPARED BY:

**BUNCH & BROCK, PSC**

**By:**    **/s/ Matthew B. Bunch**
         **MATTHEW B. BUNCH, ESQ.**
         271 West Short Street, Suite 805
         Lexington, Kentucky 40507
         (859) 254-5522
         matt@bunchlaw.com

**COUNSEL FOR THE DEBTOR**